WISE, Justice.
The plaintiff, N.C.,[1] appeals from a summary judgment entered by the Tallapoosa Circuit Court, in favor of P.R. Caldwell, her physical-education teacher, as to all of her claims against Caldwell. We reverse and remand.

Facts and Procedural History

In October 2005, N.C. was a student in the seventh grade at Edward Bell School; she had a physical-education class in the school gym during the fifth period of the school day, which was taught by Caldwell. On October 31, 2005, after the bell rang at the end of the physical-education class, Caldwell accompanied the majority of the students outside the gym, which was located in a separate building, and made sure they went into the other school buildings rather than into a nearby parking lot. N.C. was getting her book bag from the bleachers, and most of the other students had left the gym. A.H., a male student in the 12th grade at the school, approached N.C. and started pulling her toward the boys’ locker room with him. Shortly before he turned his attention to N.C., A.H. had made suggestive comments to another girl, but she ran out of the gym. A.H. and W.G., another male student, pulled N.C. toward the boys’ locker room, which was located under the gym. She told them to stop and tried to push away from them, but was not able to. A.H. pushed N.C. down the steps into the boys’ locker room, and she fell and hit her head on the rail. He then pulled her into the shower and raped her while W.G. stood watch.[2]
After the incident, N.C. left the gym and went to her sixth-period class without reporting the incident to any teacher or school official. Caldwell was outside the gym when she left. N.C. told some of her girlfriends what had happened, but asked them not to say anything. N.C. presented evidence indicating that Caldwell had appointed A.H. to serve as a student aide in *563 the fifth-period physical-education class and also evidence indicating that before the incident several female students had complained to Caldwell that A.H. had acted inappropriately toward them. On November 9, 2005, the incident with N.C. was reported to school officials.
N.C., by and through her grandfather and guardian, J.C., filed a personal-injury action against the Tallapoosa County Board of Education and against Caldwell and Glenda Menniefee, the principal of the school, in their official and individual capacities. Caldwell and Menniefee filed a motion for a summary judgment, with supporting materials; the Board also filed a motion for a summary judgment, with supporting materials. In the motion for a summary judgment, Caldwell and Mennie-fee specifically asserted, among other things, that N.C.’s claims against them were barred by the doctrine of State-agent immunity. N.C. filed a motion in opposition to the motion for a summary judgment as to Caldwell and attached additional materials to support her motion; she apparently did not oppose the entry of a summary judgment for the Board and Menniefee. Caldwell then filed motions to strike various evidentiary items and a response to N.C.’s opposition.
The trial court conducted a hearing on the various motions. Afterward, it entered the following order:
“This matter has come before the Court on the Motion for Summary Judgment for the defendants Glenda Mennie-fee and P.R. Caldwell, the Motion for Summary Judgment for the Tallapoosa County Board of Education, and three Motions to Strike filed by P.R. Caldwell. All parties have briefed the issues proposed and provided their evidence to the Court. The Court held lengthy oral argument on February 17, 2009.
“[N.C.’s] Complaint alleged that the Tallapoosa County Board of Education was in violation of Title IX for allegedly subjecting the minor plaintiff to sexual discrimination through a hostile sexual environment or was deliberately indifferent to a hostile sexual environment. [N.C.] also stated a claim, pursuant to 42 U.S.C. § 1983, that defendants Mennie-fee and Caldwell violated the minor plaintiffs Fourteenth Amendment Due Process and Equal Protection rights by failing to take appropriate corrective action after having actual knowledge that [A.H.] was sexually harassing students. [N.C.] also claimed that defendants Menniefee and Caldwell negligently or wantonly supervised the minor plaintiff and the students in the minor plaintiffs class; left [A.H.] unsupervised in a classroom setting with the minor plaintiff and other students; and failed to report pursuant to Alabama Code (1975) § 26-14-3.
“[N.C.] has responded separately to the Motions for Summary Judgment. [N.C.’s] filing on February 13, 2009, states that [N.C.] has no objection to this Court granting summary judgment on behalf of the Tallapoosa County Board of Education and Glenda Mennie-fee. Nevertheless, since [N.C.] is a minor and cannot contract to settle cases without approval of the Court, this Court has reviewed the law and evidence to determine whether summary judgment should be entered for the Tallapoo-sa County Board of Education and Glenda Menniefee.
“[N.C.] contests summary judgment for Mr. Caldwell, candidly stating that its strongest opposition is to summary judgment on the state tort claims, not the federal claim. P.R. Caldwell’s principal defense is immunity. [N.C.] has not responded to Mr. Caldwell’s arguments that the official capacity claim *564 against him is duplicative of the claim against the Board of Education, that there is no private right of action under Alabama Code (1975) § 26-14-3, that there is no express or implied duty to provide a safe environment, and that [N.C.’s] request for an ‘obey the lav^ injunction is due to fail.
“Immunity, both state and federal, is quite strong. Our Supreme Court has been particularly reluctant to hold an educator responsible for sexual misconduct by another. The Court has said that, without immunity, educators ‘may act not on the basis of policy, but with the goal of avoiding personal liability or vexatious suits,’ Nance v. Matthews, 622 So.2d 297, 302 (Ala.1993). In suits where a student was sexually assaulted either by another student or outsider and where the educators were accused of improper supervision, the Supreme Court has consistently found the educators immune on summary judgment. In cases where employees of a board of education sexually assaulted students and the supervisory educators were said to have knowledge of either the specific sexual assaults or that the board employee would sexually assault students, the Supreme Court has ruled in favor of the educators on both a motion for judgment on the pleadings and a motion to dismiss. In cases where there is notice to the supervisory educators of a potential for sexual or other physical misconduct by one student on another or by an educator on a student, the Supreme Court has consistently ruled in favor of the supervisory educators, either affirming summary judgment or, by order of mandamus, requiring the trial court to enter summary judgment. These cases include decisions that either there is no legal breach of duty or that breach of any duty did not proximately cause the sexual misconduct or physical misconduct.
“The federal claim against Mr. Caldwell is a federal civil rights violation. To be liable, Coach Caldwell must both have acted with deliberate indifference and have lost qualified immunity. [N.C.] cannot win on either argument, given the law from the Alabama Supreme Court, as noted above, and federal caselaw. Importantly, for a government employee to lose qualified immunity, the Eleventh Circuit says a court must consider decisions of the Alabama Supreme Court, U.S. Supreme Court, or Eleventh Circuit Court of Appeals. [N.C.] cannot present such caselaw, and this Court has not found caselaw supporting [N.C.] in the Court’s own examination of this matter.
“Pending before the Court are three Motions to Strike. The Court has considered each and finds portions of those motions well taken. In resolution of those Motions to Strike, the Court has not considered any improper evidence in reaching its decision. However, should the Court deny the Motions to Strike, the Court finds that nothing presented by [N.C.] overcomes the immunity possessed by the defendants.
“Further, the claim for equitable relief found in Paragraphs 43 through 47 of [N.C.’s] Complaint is due to be denied for the reason stated in the defendants’ arguments.
“Having examined the law, reviewed the evidence presented by parties, and analyzed the arguments of the parties, the Court finds that the defendants the Tallapoosa County Board of Education, Glenda Menniefee, and P.R. Caldwell, whether sued officially or individually, are entitled to summary judgment on all claims of [N.C.]. Therefore, it is OR *565 DERED, ADJUDGED and DECREED that summary judgment is entered in favor of the defendants the Tallapoosa County Board of Education, Glenda Menniefee, and P.R. Caldwell, on all claims of [N.C.]. Costs of court incurred are taxed as paid.”
N.C. filed a motion to alter, amend, or vacate, which was denied by operation of law. This appeal followed.

Standard of Review

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm, Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”’
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).”
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala.2009).

Discussion

 In Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000), the rule governing State-agent immunity was restated as follows: [3]
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law- *566 enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
792 So.2d at 405. Also,
“[t]his Court has established a ‘burden-shifting1 process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). ‘A State agent acts beyond authority and is therefore not immune when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.” ’ Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).”
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). “State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions.” Ex parte Blankenship, 806 So.2d 1186, 1190 (Ala.2000). However, “[o]nce it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Cranman, 792 So.2d at 405.” Ex parte Bitel, 45 So.3d 1252, 1257-58 (Ala.2010).
N.C. does not appear to take issue with the fact that Caldwell would ordinarily be entitled to State-agent immunity under Ex parte Cranman. However, she argues that, in this case, Caldwell is not entitled to State-agent immunity because, she alleges, there is a genuine issue of material fact as to whether, in his acts and omissions, he was acting beyond the scope of his authority. Specifically, she contends that Caldwell acted beyond his authority when he allegedly failed to properly supervise her, A.H., and W.G. at the time of the rape; when he allegedly allowed A.H. to act as a teacher’s aide; and when he ignored and failed to report previous claims by other female students of sexual harassment by A.H. Therefore, she contends that the trial court erred in entering a summary judgment for Caldwell on the basis of State-agent immunity.[4]
*567 In her deposition, N.C. specifically stated that A.H. approached her after the fifth-period dismissal bell had rung. She also stated that Caldwell and the other students had left the gym and that she, A.H., and W.G. were the only ones in the gym when A.H. approached her. Finally, N.C. stated that, when she left the gym after the rape, Caldwell was outside walking by the stairs.
Caldwell presented evidence indicating that at the time the rape occurred he was exercising judgment in accompanying the students away from the gym and ensuring that they went to other parts of the school. In his affidavit, Caldwell stated, in part:
“My name is P.R. Caldwell. At all times relevant to this suit, I was employed by the Tallapoosa County Board of Education as a physical education teacher for high school students, assistant basketball coach and the athletics director at Edward Bell High School.
“On October 31, 2005, the minor plaintiff identified as ‘N.C.’ was a student in my fifth period high school physical education class. There were twenty-one students in my fifth period class that school year. The fifth period class was held in the school’s gym, which consists of a competition size gymnasium, separate weight room, lobby and restrooms and girls’ and boys’ locker rooms. There are also two stairwells and bleachers. All of these are separated from the rest of the school, with the distance meaning that, unless I stood near the front of the gym, I could not hear the school’s bells or [public-announcement] system, which was also used for security purposes. The locker rooms are located underneath the gym so neither set of stairs leading to the locker rooms nor the locker rooms themselves are visible from the gym. Likewise, areas of the lobby, the entire bathrooms, in between cars in the parking lot and the outside of the building cannot be seen from inside the gym. Based upon my own judgment and discretion under the circumstances, taking into account the weather, number of students present in the gym and curriculum and skills to be taught on a particular day, I determined where the students would be during class (either outside, in the gym or in the weight room) and how they would be supervised. I had been given no specific instructions, either written or verbal, by the Tallapoosa County Board of Education or by any of my superiors (or anyone else) regarding how to supervise the students in the gym, locker rooms and weight room prior to the incident made the basis of the complaint. I also had been given no specific instructions or guidelines on how to supervise students in the different areas when it was necessary for me to divide them between the gym, locker rooms and weight room. I was not given any specific instructions or guidelines on how to dismiss students at the end of the class period from the gym. There are no Board of Education policies which specifically instruct me on how to do this. In determining how to allocate my time between the students so that they were adequately monitored and supervised, I relied upon my own judgment. The 2005-06 school year was the only year in which I was not provided an aide to assist me in monitoring the activities of the students in my classes.
“I believe that young adults and high school students possess the maturity *568 and knowledge to be able to work on the skills assigned that day if I step out of the gym and into the weight room or vice versa. I believe that they also know how to exit the gym at the end of the class period and proceed to their lockers and next classes. I know from my experience and training that high school students need not be individually supervised at all times nor do these students require an educator to be within their view constantly when performing physical education activities. When class is over, my experience tells me that students leave to go to their next class. I, too, am allowed to leave, including to go to the office to retrieve my mail. I must regularly check my mailbox for mail and notices, including absentee notices during the school day. Furthermore, walking away from the gym when the classes change allows me to better monitor the change of classes, particularly since the gym is in a separate building from the remainder of the school. My presence outside the gym also discourages students from going to the parking lot.”
Menniefee also provided evidence that showed that Caldwell was acting within the scope of his duties when the rape occurred. In her affidavit, she stated: '
“It is my understanding that there were no students assigned to Coach Caldwell in the sixth period during the 2005-06 school year. It was appropriate for Coach Caldwell to walk out of the gym with the students from his fifth period class after the dismissal bell had rung to check his mail between class periods. If sixth period was Coach Caldwell’s planning period that year, he would not have been required to remain in the gym during sixth period.”
N.C. did not dispute Caldwell’s assertions in his affidavit that he- was acting within the scope of his duties when he left the gym with the other students after the fifth-period dismissal bell rang. Based on the undisputed evidence presented, Caldwell satisfied his burden of establishing that, at the time of the rape, which occurred after the fifth-period dismissal bell had rung, he was exercising judgment in the discharge of his duty to supervise and educate students by accompanying them out of the gym, ensuring that they did not go to the parking lot but went back to the school building, and thereafter going to the main school building to check his mail.
However, N.C. also argues that Caldwell acted beyond his authority by appointing A.H. as a student aide to assist him with his fifth-period physical-education class. In support of her motion in opposition to Caldwell’s motion for a summary judgment, N.C. presented affidavits from three students who stated that Caldwell had told them that A.H. was going to be in charge of the class a few days a week because Caldwell did not have an aide to assist him with the class. She also presented an affidavit from A.H. in which he stated that Caldwell had asked him to supervise students in the gym and weight room from noon until 3:00 p.m. on certain days, that Caldwell went into his office or left campus during those times, and that Menniefee was aware that A.H. was supervising students because Caldwell had allegedly told her about the arrangement. Caldwell did state that the 2005-2006 school year was the first year he had not been given an aide to assist him and that he did not have a teaching assistant or other teacher to help him with monitoring his students. However, he never indicated that he appointed A.H. to act as a student aide during Caldwell’s fifth-period physical-education class. Rather, when he was asked if he allowed A.H. to be in the gym after A.H. was finished with school on any given *569 day,[5] Caldwell specifically stated that they always tried to run other students out of the gym and that he had, in fact, asked A.H. to leave the gym on previous occasions because he was not supposed to be there. He further stated that he did not know that A.H. was in the gym on the day of the incident; that, to his knowledge, A.H. did not have permission from anyone to be in the gym on the day of the incident; and that, if he had known A.H. was there, he would have asked him to report to the office. Also, the faculty handbook for Edward Bell School provides: “Any student not scheduled for a class should not attend that class.” Further, Menniefee testified that A.H. should not have been in the gym at the time the incident occurred. Specifically, she testified that he got out of school at 11:45 a.m. and was required to leave campus at that time unless he was eating lunch. Finally, Menniefee testified that she conducted teacher evaluations of Caldwell and that, during her walk-through visits to the gym, he was performing his duties and supervising the students in his classes and was not in his office or off campus. Thus, there are genuine issues of material fact as to whether Caldwell actually appointed A.H. as a student aide and, if he did, whether he acted beyond his authority in doing so.
Finally, N.C. argues that Caldwell acted beyond his authority because he allegedly ignored and failed to report prior claims by other female students of sexual harassment by A.H. The Tallapoosa County Schools 2005-2006 Code of Conduct provides that “[i]t shall also be a violation of board policy for any teacher ... to tolerate sexual harassment.... ” Menniefee testified that, if Caldwell had been aware that A.H. was sexually harassing female students, he would have been required to report it. She also testified that Caldwell never reported any such sexual harassment by A.H. to her. Further, Caldwell stated that he was not aware that A.H. was sexually harassing anyone and that he had not received any specific complaints to that effect. He added that, if he had known that A.H. was sexually harassing female students, he would have taken disciplinary action against A.H. However, N.C. presented affidavits from two female students who alleged that A.H. made inappropriate comments of a sexually harassing nature to them and that they complained to Caldwell that A.H. was “harassing” them. Therefore, there are genuine issues of material fact as to whether Caldwell was actually aware that A.H. was sexually harassing other female students and, if he was, whether he failed to respond to the allegations.
Caldwell established that N.C.’s claims arose from a function that would entitle him to State-agent immunity. See Blankenship, supra; Cranman, supra. However, N.C. produced evidence that, if believed, could establish that Caldwell acted beyond his authority in appointing A.H. as a student aide and in ignoring and failing to report other claims of sexual harassment by A.H. See Bitel, supra; Cranman, supra. Therefore, there are genuine issues of material fact as to whether Caldwell is entitled to a summary judgement on the basis of the doctrine of State-agent immunity. See, e.g., Ex parte Jones, 52 So.3d 475 (Ala.2010).
“ ‘If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P.’ Ex parte Wood, 852 So.2d 705, 708 (Ala.2002); Blackwood v. City of Hanceville, 936 So.2d 495, 507 (Ala.2006) *570 (holding that there was a genuine issue of material fact as to the State-agent defendant’s rate of speed; a jury’s determination of that speed would determine whether the defendant was entitled to State-agent immunity and privilege under Ala.Code 1975, § 6-5-338(a) and § 32-5A-7(b)(3)).”
Suttles v. Roy, 75 So.3d 90, 100 (Ala.2010).

Conclusion

Because there remain genuine issues of material fact that could defeat Caldwell’s claim of State-agent immunity, the trial court erred in entering a summary judgment for Caldwell on that ground: Therefore, we reverse the trial court’s judgment and remand this case for further proceedings.
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, SHAW, and MAIN, JJ., concur.
MURDOCK, J., dissents.

. N.C.'s complaint filed in 2007 and in the Tallapoosa Circuit Court was filed in the name of "N.C., a minor child, by and through her guardian, J.C.” The noticé of appeal filed in 2009 was filed in the name "N.C.” It does not appear from anything in the record, however, that N.C. has reached the age of majority or has been emancipated.

. The record indicates that A.H. pleaded guilty to the first-degree rape of N.C.

. Cranman was a plurality opinion. The test set forth in Cranman was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173, 178 (Ala.2000).

. N.C. also addresses the admissibility of several evidentiary items. Although the trial court stated that portions of Caldwell’s motions to strike were well taken, it did not *567 specify which, if any, of the evidentiary items it struck. For purposes of this opinion, we have treated all the items considered as having been admitted. Therefore, we will not address N.C.’s arguments regarding the admissibility of the evidentiary items.

. The record indicates that A.H. was finished with his school day around lunchtime.