MAIN, Justice.
The Montgomery County Board of Education (“the Board”); its members Charlotte Meadows, Eleanor Lewis Dawkins, Mary Briers, Melissa B. Snowden, Robert Porterfield, Beverly Ross, and Heather Sellers (hereinafter referred to collectively as “the Board members”); and Elaine L. Guice, a teacher in the Montgomery County School System (“Guice”), petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying their motion for a summary judgment as to the claims filed against them by S.K. by and through S.K’s mother, Tertrina Capehart, and to enter an order granting their summary-judgment motion. We grant the petition and issue the writ.
I. Factual Background and Procedural History
According to the complaint, on April 26, 2007, S.K., a third-grade student at Peter Crump Elementary School in Montgomery County, went into the restroom with two friends; Guice, her third-grade teacher, did not accompany them. S.K. claimed *840 that when she attempted to leave the restroom stall, the stall door jammed. She further claimed that she attempted to climb over the door to get out of the stall but slipped and fell, cutting her face on a metal hook or hanger on the back of the door. On April 24, 2009, S.K., by and through her mother, Tertrina Capehart, sued the Board, the Board members in their official capacities, and Guice, both individually and in her official capacity, asserting claims of negligence and wantonness and seeking compensatory and punitive damages.
The Board, the Board members, and Guice filed a motion for a summary judgment. They asserted that there were no genuine issues of material fact, that Guice is immune from suit under the doctrine of State-agent immunity and that the Board and the Board members are immune from suit under the doctrine of State immunity. They also asserted that S.K. was contribu-torily negligent, arguing that her injuries were the result of her “playing” in the restroom. Additionally, they asserted that S.K. had failed to exhaust all administrative remedies available to her. On July 15, 2011, the Montgomery Circuit Court issued an order denying the summary-judgment motion. The Board, the Board members, and Guice petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate the July 15, 2011, order and to enter a summary judgment in their favor.
II. Standard of Review
“ ‘ “While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte Purvis, 689 So.2d 794 (Ala.1996)....
“ ‘ “Summary judgment is appropriate only when ‘there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala.1996). A court considering a motion for summary judgment -will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397 (Ala.1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala.1991); will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala.1992); and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala.1998).
“ ‘ “An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala.1991), Boland v. Fort Rucker Nat’l Bank, 599 So.2d 595 (Ala.1992), Rowe v. Isbell, 599 So.2d 35 (Ala.1992).” ’
“Ex parte Turner, 840 So.2d 132, 135 (Ala.2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala.2000)). A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: ‘ “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the *841 court.” ’ Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)).”
Ex parte Yancey, 8 So.3d 299, 303-04 (Ala.2008).
III. Analysis

A. Claims against the Board

The Board contends that it is entitled to a summary judgment because, it says, it enjoys immunity, pursuant to Art. I, § 14, Ala. Const.1901, from the tort claims alleged against it in the complaint. Although S.K. initially conceded that the Board is entitled to State immunity, in her brief to this Court she argues that “the Defendants’ immunity” is not absolute when one or more of the defendants have acted willfully, in bad faith, and beyond their authority. She then alleges that she has “provided plenty of evidence that all Defendants acted beyond their authority, acted willfully, and in bad faith.” S.K.’s argument is not well taken. For the reasons that follow, we hold that the Board is entitled to the immunity it asserted in its summary-judgment motion.
Section 14, Ala. Const.1901, provides “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” It is well settled in Alabama that “[ljocal school boards are agencies of the State, not of the local governmental units they serve, and they are entitled to the same absolute immunity as other agencies of the State.” Ex parte Bessemer Bd. of Educ., 68 So.3d 782, 789 (Ala.2011). In Ex parte Monroe County Board of Education, 48 So.3d 621 (Ala.2010), this Court held:
“ ‘ “Section 14, Ala. Const.1901, provides ‘[tjhat the State of Alabama shall never be made a defendant in any court of law or equity.’ This section affords the State and its agencies an ‘absolute’ immunity from suit in any court. Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000) (‘Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state....’). Indeed, this Court has described § 14 as an ‘almost invincible’ “wall’ of immunity. Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994). This Vail of immunity’ is ‘nearly impregnable,’ Patterson v. Gladwin Carp., 835 So.2d 137, 142 (Ala.2002), and bars ‘almost every conceivable type of suit.’ Hutchinson v. Board of Trustees of Univ. of Ala., 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case ‘presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.’ Patterson, 835 So.2d at 142-43.”
“ ‘Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (emphasis added). For purposes of § 14 immunity, county boards of education are considered agencies of the State. Louviere v. Mobile County Bd. of Educ., 670 So.2d 873, 877 (Ala.1995) (“County boards of education, as local agencies of the State, enjoy [§ 14] immunity.”). Thus, this Court has held that county boards of education are immune from tort actions. See Brown v. Covington County Bd. of Educ., 524 So.2d 623, 625 (Ala.1988); Hutt v. Etowah Corn *842 ty Bd. of Educ., 454 So.2d 973, 974 (Ala.1984).’
“Ex parte Jackson County Bd. of Educ., 4 So.3d [1099,] at 1102-03 [ (Ala.2008) ].
“In Ex parte Hale County Board of Education, 14 So.3d 844 (Ala.2009), this Court revisited the issue whether county-boards of education were immune from suit, overruling Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala.1976), and Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774 (1920), and stating that ‘because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit’ and that the immunity accorded a county board of education is absolute.”
48 So.3d at 624-25. Therefore, the motion for a summary judgment based on § 14 immunity was due to be granted as to the Board and a summary judgment entered on the tort claims against the Board.

B. Claims against the Board members and, Guice in their official capacities

The Board members and Guice likewise contend that they enjoy immunity under to § 14 for the claims asserted against them in their official capacities. The Board members and Guice are correct. See Bessemer Bd. of Educ., 68 So.3d at 789 (“ ‘Not only is the State immune from suit under § 14, but “[t]he State cannot be sued indirectly by suing an officer in his or her official capacity.” ’ ” (quoting Alabama Dep’t ofTransp. v. Harbert Int’l, Inc., 990 So.2d 831, 839 (Ala.2008))); and Ex parte Dangerfield, 49 So.3d 675, 681 (Ala.2010) (holding that all claims against a State official in his or her official capacity seeking damages are barred by the doctrine of immunity). “This Court has held that the immunity afforded the State by § 14 applies to instrumentalities of the State and State officers sued in their official capacities when such an action is effectively an action against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003).” Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala.2011). “It is settled beyond cavil that State officials cannot be sued for damages in their official capacities. Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 132-33 (Ala.2002).” Ex parte Dangerfield, 49 So.3d at 681. Therefore, because the claims against the Board members and Guice in their official capacities are barred by Art. I, § 14, Ala. Const. 1901, the motion for a summary judgment as to them in their official capacities was due to be granted.

C. Claims against Gtdce in her individual capacity

Guice contends that she is entitled to State-agent immunity for the claims asserted against her in her individual capacity. Guice argues that the claims are based on acts arising from her performance of official duties and exercising discretion as a teacher for the Montgomery County Board of Education.
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
*843 “(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000).[1]
“This Court has established a ‘burden-shifting’ process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). ‘A State agent acts beyond authority and is therefore not immune when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.” ’ Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).”
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). Additionally, as this Court recently stated:
“ ‘State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions.’ Ex parte Blankenship, 806 So.2d 1186, 1190 (Ala.2000). However, ‘[o]nce it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. [Ex parte ] Cranman, 792 So.2d [392,] at 405 [ (Ala.2000) ].’ Ex parte Bitel, 45 So.3d 1252, 1257-58 (Ala.2010).”
N.C. v. Caldwell, 77 So.3d 561, 566 (Ala.2011).
S.K. attempts to analogize the facts in cases such as Caldwell and Ex parte Monroe County Board of Education, supra, to the facts in this case. In Caldwell, N.C. alleged that she was raped by a student in *844 the boys’ locker room after gym class had ended. The trial court entered a summary judgment in favor of Caldwell, the physical-education teacher, and N.C. appealed. This Court determined that a genuine issue of material fact existed as to whether Caldwell had appointed the student who allegedly raped N.C. to serve as a student aide and, if so, whether he had exceeded his authority in doing so. In making that determination, this Court looked to the affidavits and other evidence in the record at the summary-judgment stage. In so doing, we noted that “N.C. presented evidence indicating that Caldwell had appointed A.H. to serve as a student aide in the fifth-period physical-education class and also evidence indicating that before the incident several female students had complained to Caldwell that A.H. had acted inappropriately toward them.” Caldwell, 77 So.3d at 652-63. There was also evidence in the record indicating that the school’s faculty handbook expressly provided that “ ‘[a]ny student not scheduled for a class should not attend that class,’ ” 77 So.3d at 569, and that Caldwell was aware of the policy because he had instructed students, on occasion even the student aide who allegedly committed the rape, to leave the gym when they were not scheduled for the class then being conducted there.
In Ex parte Monroe County Board of Education, a majority of this Court determined that the teacher, against whom claims of negligence, wantonness, and assault arising out of a spanking incident had been asserted, had not established that she was entitled to State-agent immunity; therefore, although this Court granted the board’s mandamus petition and directed the trial court to enter a summary judgment for the board, it denied the mandamus petition as to the teacher. In so doing, the majority relied on the fact that the evidence indicated that the teacher had administered corporal punishment to the student without any other employee being present, even though the board had a written policy governing corporal punishment, which included a provision that another employee be present whenever corporal punishment was being administered. The majority concluded that the teacher had exceeded the scope of her authority and that, therefore, she was not entitled to a summary judgment based on State-agent immunity.
The type of allegations present in Caldwell (the rape of a student by another student whom Caldwell had allegedly designated as a student aide and Caldwell’s ignoring other complaints from female students about the student aide’s behavior toward them) and Ex parte Monroe County Board of Education (evidence at the summary-judgment stage conclusively established that the teacher, who had violated a specific written policy of the school board by administering corporal punishment without another employee’s being present, had exceeded the scope of her authority and was not entitled to State-agent immunity) are not present in this case. Certainly, in the absence of any rule or policy of the Board to the contrary, it was well within Guice’s discretion to determine when and how to permit students in her class to take restroom breaks during the school day. The materials submitted by the parties do not indicate any policy or rule requiring a teacher to accompany students to the restroom. The evidence indicated that before the incident underlying this action S.K. had routinely gone to the restroom without a teacher’s supervision. Thus, the burden shifted to S.K. to show that Guice exceeded that discretion in allowing S.K. to go into the restroom without an adult. S.K. attempts to make such a showing by pointing to Capehart’s deposition in which Capehart stated that she *845 had written Guice and informed her that S.K. suffered from attention deficit/hyperactivity disorder and should not be allowed to wander around the school unattended. Even assuming that Capehart did, in fact, provide that general information to Guice, it simply does not rise to the level of creating a genuine issue of material fact as to whether Guice exceeded her discretionary authority in permitting S.K. to go into the restroom without accompanying her. S.K. was not assigned to any sort of special-education program or designated by the school as needing additional monitoring, nor was Capehart advised that S.K. would, in fact, be treated differently than any other student in the general educational program at the school. Therefore, Guice is entitled to State-agent immunity as to the claims against her in her individual capacity, and her motion for a summary judgment as to the claims against her in her individual capacity was due to be granted.
IV. Conclusion
Because the Board has demonstrated that under Art. I, § 14, Ala. Const.1901, it has absolute immunity from suit on the claims asserted against it, the Board has established a clear legal right to a summary judgment on the claims asserted against it. Because the Board members and Guice have demonstrated that under Art. I, § 14, Ala. Const.1901, they are entitled to the same immunity from suit as the Board, they have established a clear legal right to a summary judgement on the claims asserted against them in their official capacities. Finally, because Guice has demonstrated that she is entitled to State-agent immunity as to the claims asserted against her in her individual capacity, she has established a clear legal right to a summary judgment on those claims. Therefore, we grant the petition and issue a -writ directing the Montgomery Circuit Court to vacate its July 15, 2011, order denying the defendants’ summary-judgment motion and to enter a summary judgment on all the claims asserted against the Board, the Board members, and Guice.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and WISE, JJ„ concur.

. Although Cranman was a plurality opinion, the test set forth in Cranman was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173, 178 (Ala.2000).