Rel: January 19, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————

### SC-2023-0201

————————————

## Ex parte Emma Louie, Garry Rice, and Toice Goodson

## PETITION FOR WRIT OF MANDAMUS

## (In re: Ester Eaton and Anthony Eaton

## v.

## Emma Louie, Garry Rice, and Toice Goodson)

## (Greene Circuit Court: CV-16-900019)

STEWART, Justice.

Emma Louie, Garry Rice, and Toice Goodson ("the defendants")

have petitioned this Court for a writ of mandamus directing the Greene

Circuit Court ("the trial court") to enter a summary judgment on the basis that the claims asserted against them by Ester Eaton and Anthony Eaton ("the plaintiffs") are barred by State-agent immunity. For the following reasons, we grant the petition and issue a writ directing the trial court to enter a summary judgment in favor of the defendants.

<u>Background</u>

The material facts are undisputed. The defendants assert that they are entitled to State-agent immunity by virtue of their employment with the Greene County Board of Education ("the Board"). At the time of the incident underlying the plaintiffs' claims, Louie served as the Board's superintendent, Rice was employed as the Greene County High School ("GCHS") principal, and Goodson was employed as the GCHS vice principal.

Ester Eaton began working as a substitute teacher in October 2014, when she received the Board's approval. On April 7, 2015, Ester was called to substitute at GCHS. When she arrived, Goodson assigned Ester to supervise a classroom with both students who had been referred to the Alternative Program and students who had been assigned to in-school suspension ("ISS"). ISS was instituted by GCHS officials as an

alternative to suspending a student from school. The Alternative Program served as an alternative-learning placement for 6th- through 12th-grade students in Greene County schools exhibiting disruptive behaviors or problems associated with certain code-of-conduct violations. The Board relocated the Alternative Program to GCHS from a different school in March 2015. Upon the relocation, GCHS officials placed the Alternative Program students in the classroom previously established for students assigned to ISS ("the ALT/ISS classroom"). GCHS officials also routinely used the ALT/ISS classroom as a temporary placement for students with possible disciplinary violations that GCHS officials had not yet had the opportunity to address.

The ALT/ISS classroom was ordinarily supervised by Officer Stinson, and occasionally by Officer Garner, who were certified police officers assigned to GCHS as school-resource officers. On April 7, 2015, Officer Stinson and numerous teachers were absent from GCHS, and Rice was at a work-related conference in another city. Goodson initially assigned Officer Garner to supervise the students in the ALT/ISS classroom; however, Goodson assigned Ester to take over the ALT/ISS-classroom supervision because he needed Officer Garner's assistance in

supervising the hallways in response to threats of impending violence among multiple male students. Goodson had also requested and received additional local law-enforcement presence at GCHS to address the threat.

T.F. and C.F. are sisters who were in the ALT/ISS classroom on April 7. Around lunchtime, Goodson placed T.Y. in the ALT/ISS classroom, as a result of her being tardy to class, until he had the opportunity to speak with her to obtain more information. Although T.Y. told Goodson that it was not a good idea to put her in that classroom with T.F. and C.F., Goodson did not believe that there was a serious potential for physical violence between those students.[1] When T.Y. entered the ALT/ISS classroom, she and C.F. had a brief argument. Ester had T.Y. sit in a chair next to her desk to keep the students separated. Approximately 20 minutes later, Goodson brought four or five additional students with whom T.Y. apparently had issues into the ALT/ISS

---

[1]When T.F. and C.F. arrived at GCHS, T.F. told Officer Garner that she and T.Y. were having issues. Officer Garner advised Goodson, and Goodson spoke with T.F. and C.F. regarding the issues with T.Y. Goodson referred all three to the GCHS counselor. The counselor did not report any concerns to Goodson, and Goodson believed that the situation had been resolved.

classroom. Goodson and Officer Garner checked the ALT/ISS classroom every three to five minutes while patrolling the hallways, and Ester never reported any concerns to them.

At some point, C.F., T.F., and another student, S.W., rushed toward Ester and T.Y. Ester stood up, and they began striking her in the face and head. Ester briefly lost consciousness, and she was transported to an emergency room for treatment. Ester suffered, among other injuries, severe bruising, swelling in her arm, a torn rotator cuff, and hearing loss in her right ear.[2]

The plaintiffs sued the defendants, asserting claims of negligence; negligent and wanton hiring, supervision, and training; and loss of consortium. The plaintiffs alleged, generally, that the defendants had violated the Board's policies by placing unauthorized students in the ALT/ISS classroom and by assigning Ester to supervise that classroom.

The defendants eventually moved for a summary judgment, asserting, among other grounds, that they were entitled to State-agent

---

[2]Two other female students joined in the attack. It is not clear from the materials presented with the mandamus petition whether Ester was the target of the attack or whether she was caught in the middle. It is also unclear whether T.Y. was attacked.

immunity. The defendants supported their motion with deposition testimony of Louie, Rice, Goodson, and Ester; the plaintiffs' responses to interrogatories; the incident report made by Ester; and copies of the pleadings.

The plaintiffs filed a response in opposition to the defendants' summary-judgment motion in which they argued that the defendants had failed to follow specific policies and procedures contained in the 2014-2015 GCHS Faculty Handbook ("the faculty handbook") and the 2014-2015 Information Guide for Students and Parents ("the information guide"). To their response, the plaintiffs attached the faculty handbook, the information guide, and deposition testimony of Ester, Goodson, Rice, Officer Garner, and Glenda Hodges, a substitute teacher who had previously supervised students in the Alternative Program.

Rice testified that the information guide and the faculty handbook contained guidelines -- not mandatory rules or policies. Goodson's testimony, likewise, indicated that the provisions in the information guide allowed room for discretion. Louie testified that the information guide contained "expectations" that administrators should use to inform their decisions but that they were permitted to deviate from those

6

expectations if the circumstances warranted. Louie explained that the administrators are the individuals actually present in the schools and that they have to have the flexibility to consider the circumstances to decide the best course of action and consequences.

Rice, Goodson, and Louie all testified that no policy or rule required the Alternative Program to be held at a certain location or prevented a teacher or a substitute teacher from supervising the students in the Alternative Program or ALT/ISS classroom. In addition, Rice's and Goodson's testimony indicated that, although Officer Stinson ordinarily supervised the ALT/ISS classroom and Officer Garner sometimes filled in, there was no rule or policy requiring a school-resource officer to supervise the students in the Alternative Program.

Both Rice's and Goodson's testimony indicated that ISS was an appropriate disciplinary measure and that it was not in violation of the provisions in the information guide or the faculty handbook. Rice and Louie testified that local school administrators are authorized to develop rules to assist in enforcing the "Student Code of Conduct" section in the information guide, which provides: "Each classification is followed by a disciplinary procedure to be implemented by the principal or his or her

7

designees. In addition, [t]he Board … authorizes the administration at the local school to develop specific, local school rules and regulations which will assist in enforcing the student Code of Conduct."

Hodges testified that Ester should not have been assigned to supervise the ALT/ISS classroom because she was a substitute teacher and was not "certified." Hodges also testified that the Alternative Program should be held at a location separate from GCHS. Officer Garner testified that he was surprised that Goodson had assigned Ester to supervise the ALT/ISS classroom and that a school-resource officer should be assigned to supervise that classroom.

After a hearing, the trial court granted the defendants' motion for a summary judgment with regard to the plaintiffs' claims of negligent and wanton hiring, supervision, and training but denied the defendants' motion with regard to the plaintiffs' other claims of negligence and loss of consortium. The defendants timely filed a petition for a writ of mandamus in this Court.

## Standard of Review

A petition for a writ of mandamus is an appropriate method by which an appellate court may review the denial of a summary-judgment

8

motion based on the defense of State-agent immunity. Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (citing Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000)). To obtain the extraordinary remedy of a writ of mandamus, the petitioner must demonstrate: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So. 2d 1270, 1272 (Ala. 2001)." Id. at 543.

## Discussion

The test for State-agent immunity set forth in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000)(plurality opinion), which was adopted by the Court in Ex parte Butts, 775 So. 2d 173 (Ala. 2000), provides that a State agent is entitled to immunity from civil liability for negligence alleged to have occurred while the State agent was engaged in certain conduct. As relevant here, a State agent shall be immune if his or her conduct involved "'formulating plans, policies, or designs'"; "'exercising his or her judgment in the administration of a department or agency of government [… while] hiring, firing, transferring, assigning, or supervising personnel'"; or "'exercising judgment in the discharge of duties imposed

9

by statute, rule, or regulation in … educating students.'" Ex parte Butts, 775 So. 2d at 177-78 (quoting Ex parte Cranman, 792 So. 2d at 405); see also § 36-1-12, Ala. Code 1975. "Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process." Ex parte Trottman, 965 So. 2d 780, 783 (Ala. 2007). The State agent's entitlement to immunity can be defeated in circumstances in which "the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006).

A State agent bears the initial burden of demonstrating entitlement to immunity, and, once entitlement to immunity is shown, the plaintiff bears the burden of establishing, by substantial evidence, an exception to immunity. Ex parte Estate of Reynolds, 946 So. 2d at 452. In this case, there is no dispute that the defendants met their burden of demonstrating that they were entitled to immunity. The plaintiffs assert, however, that the defendants were stripped of immunity because they acted beyond their authority by not following established policies and procedures contained in the faculty handbook and the information guide. This Court has acknowledged that a plaintiff may demonstrate that a

State agent acted beyond authority by showing that the agent failed "'"to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist."'" Ex parte Estate of Reynolds, 946 So. 2d at 452 (quoting Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003), quoting in turn Ex parte Butts, 775 So. 2d at 178). Accordingly, we must determine whether the plaintiffs established, by substantial evidence, that the defendants violated provisions in the faculty handbook or the information guide and, if so, whether such provisions qualify as "the type of 'detailed rules or regulations' that would remove [the defendants'] judgment in the performance of required acts." Ex parte Spivey, 846 So. 2d 322, 333 (Ala. 2002)(citing Ex parte Butts, 775 So. 2d at 178).

The plaintiffs' claims against the defendants center primarily on alleged violations of provisions in the information guide. "[T]he threshold question is whether a rule or directive in" the information guide, or the faculty handbook, sets "forth a sufficiently specific, mandatory duty governing the conduct of the [defendants] at issue in this case." Ex parte Herring, [Ms. SC-2022-0981, Oct. 27, 2023] ___ So. 3d ___, ___ (Ala. 2023).

The defendants, relying on, among other authorities, Moore v. Tyson, 333 So. 3d 668 (Ala. 2021), argue that the information guide and

11

the faculty handbook contain general guidelines and not specific rules that would remove an administrator's discretion. In <u>Moore</u>, the Moores sued a teacher and a school administrator after their child was injured when the teacher left the classroom to use the restroom. The Moores argued that the teacher had acted beyond her authority by violating provisions related to student supervision contained in the local board of education's policy manual and certain training videos. The trial court in that case entered a summary judgment in favor of the teacher and school administrator based on State-agent immunity. The Moores appealed, and this Court held that they had not presented any "detailed rule or regulation that prohibited [the teacher] from leaving the students in her classroom unattended in order to use the restroom." 333 So. 3d at 676. This Court further held that the statements in the policy manual and the training videos indicating that teachers should provide "effective supervision" were "'general statements' and '[were] not the type of "detailed rules or regulations" that would remove [the teacher's] judgment in the performance of required acts.'" <u>Id.</u> (quoting <u>Ex parte Spivey</u>, 846 So. 2d at 333, quoting in turn <u>Ex parte Butts</u>, 775 So. 2d at 178).

The plaintiffs assert that <u>Moore</u> is distinguishable because it did not involve detailed policies or procedures. The plaintiffs assert that this case involves specific, established rules and policies similar to those considered in, among other cases, <u>N.C. v. Caldwell</u>, 77 So. 3d 561 (Ala. 2011), and <u>Ex parte Yancey</u>, 8 So. 3d 299 (Ala. 2008).[3] <u>Caldwell</u> and <u>Ex parte Yancey</u> do not support the plaintiffs' position because the policies at issue in those cases explicitly established restrictions on the State agent's discretion while, in this case, as explained below, the information guide and faculty handbook do not contain explicit, detailed rules that the defendants are alleged to have violated.

The plaintiffs argue that the defendants acted beyond their authority by violating certain provisions in the information guide related

---

[3]In <u>Caldwell</u>, 77 So. 3d at 569, this Court held that a genuine issue of material fact existed as to whether a teacher had engaged in conduct that constituted an explicit violation of school-board policy, thus precluding a summary judgment, and, in <u>Ex parte Yancey</u>, 8 So. 3d at 307, this Court held that a teacher's conduct was a "clear violation of the policy set forth in the student handbook, to which [the teacher was] bound."

to the Alternative Program.[4] The "Alternative Program" section in the information guide provides, in its entirety:

> "The Alternative Program is designed primarily as an alternative-learning placement for students who exhibit disruptive behavior and/or problems associated with Class III Violations. The major goal of the Alternative Program is to provide a curriculum designed to meet the individual needs, abilities, and interests of students referred for alternative placement.
>
> "The Alternative Program is staffed with certified personnel and support staff. Students may be referred to the Alternative Program in grades 6-12 or based on extenuating circumstances. Acceptance to the Alternative Program is based upon the recommendation of the Truancy Officer and Supervisor of the Truancy Officer.
>
> "Parents are responsible for providing daily transportation for students admitted to the Alternative Program. A waiver may be obtained for special students with documented hardships.
>
> "Upon successfully completing placement in the Alternative Program, the students are placed back into the regular school setting and monitored for progress.
>
> "All students placed in the Alternative Program must abide by the policies of the Greene County Board of Education including the rules listed in the Student Code of Conduct and

---

[4]With the exception of a few arguments directed specifically against Rice and Goodson, most of the plaintiffs' arguments are broadly directed against all the defendants. The plaintiffs do not identify any purported regulation or policy that Louie, specifically, violated, nor do they explain how Louie, specifically, acted beyond her authority or otherwise lost her entitlement to immunity.

additional rules developed specifically to facilitate a speedy transition back to the parent school."

The plaintiffs assert that the Alternative Program is required to be held in a location separate from GCHS and that that "'program is to be staffed with certified personnel and support staff.'" Plaintiffs' brief at 17 (purportedly quoting the information guide). The plaintiffs contend that the defendants acted beyond their authority by placing the Alternative Program at GCHS, combining the students in that program with students assigned to ISS,[5] and placing Ester in the ALT/ISS classroom to supervise because, they assert, she is a substitute teacher and not "certified."

The "Alternative Program" section of the information guide neither requires the Alternative Program class to be held at a location separate from GCHS nor requires, or prohibits, a particular physical location for the program. Likewise, the "Alternative Program" section does not contain a directive requiring the Alternative Program "to be" staffed with certified personnel, as the plaintiffs contend. Instead, that section states

---

[5]The plaintiffs assert that Rice, specifically, acted beyond his authority by combining students from the Alternative Program in the same classroom with students assigned to ISS.

that the program "is staffed with certified personnel and support staff," and nothing in that section defines "certified personnel" or addresses what qualifications "certified personnel" must possess. Certainly, nothing in the information guide prohibited Goodson from assigning a substitute teacher like Ester to temporarily supervise the students in the ALT/ISS classroom to enable the school-resource officer to respond to a pressing security/safety issue at the school. Indeed, "[t]his is precisely the type of situation that requires an exercise of discretion, based on the circumstances as they are known to the [State agent] at that time." Edwards v. Pearson, 309 So. 3d 1216, 1224 (Ala. 2020)(plurality opinion)(holding that school bus driver's actions when faced with an exigent circumstance required the exercise of discretion and, therefore, were not beyond her authority).

The plaintiffs also assert that Goodson violated the guidelines listed in the tardy policy in the information guide by placing T.Y. in ISS. However, the plaintiffs' argument is based on the faulty premise that Goodson was disciplining T.Y. by assigning her to ISS. To the contrary, Goodson testified that, because of the escalating security situation on the morning of April 7, 2015, he placed T.Y. temporarily in the ALT/ISS

classroom so that she could be supervised until he had an opportunity to discuss the situation with her to determine what discipline, if any, should be imposed. The plaintiffs have not provided any specific rule or regulation that prohibited such action under the circumstances faced by Goodson on April 7, 2015. See Edwards, 309 So. 3d at 1224.

The plaintiffs also argue that the defendants acted beyond their authority by implementing and using ISS as a disciplinary measure because, they assert, there is no authority for the creation or use of ISS "in the Greene County handbook."[6] Plaintiffs' brief at 21. However, the "Student Code of Conduct" section in the information guide expressly provides for the creation of "a disciplinary procedure to be implemented by the principal or his or her designees. In addition, [t]he Board … authorizes the administration at the local school to develop specific, local school rules and regulations which will assist in enforcing the student Code of Conduct." Moreover, the plaintiffs have not identified a specific, detailed rule or regulation that they allege prohibited the defendants from implementing or using ISS. Accordingly, because the plaintiffs have

_____

[6]It is not clear whether the plaintiffs' reference to the "Greene County handbook" is actually a reference to the information guide, the faculty handbook, or some other source.

not identified "a sufficiently specific, mandatory duty governing the conduct" of any of the defendants, Ex parte Herring, ___ So. 3d at ___, the plaintiffs have not established that the defendants acted beyond their authority by implementing and using ISS at GCHS.

Ultimately, the plaintiffs failed to establish that the information guide or the faculty handbook -- the only sources of guidelines the defendants are alleged to have violated -- contain specific, nondiscretionary rules or regulations that were required to be strictly followed by the defendants or that any guidelines in the information guide or the faculty handbook constituted detailed rules or regulations removing the defendants' discretion in the performance of their job functions. See Ex parte Spivey, 846 So. 2d at 333, and Moore, 333 So. 3d at 676. As a result, the plaintiffs have not demonstrated that the defendants acted beyond their authority, and, accordingly, the defendants' conduct is covered by State-agent immunity.

Conclusion

Because the plaintiffs' claims against the defendants are barred by State-agent immunity, the defendants have established a "'clear legal right' to summary judgments in their favor." Ex parte Spivey, 846 So. 2d

18

at 334 (citing <u>Ex parte Duvall</u>, 782 So. 2d 244, 248 (Ala. 2000)). Accordingly, we grant the defendants' mandamus petition and issue a writ directing the trial court to enter a summary judgment in their favor on all of the plaintiffs' claims.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Sellers, Mendheim, Mitchell, and Cook, JJ., concur.

Bryan, J., dissents.