PARKER, Justice
(concurring in part and dissenting in part).
I concur in part with and dissent in part from the majority’s no-opinion affirmance of the Monroe Circuit Court’s summary judgment in favor of Larry Turner, Dennis L. Mixon, the Monroe County Board of Education (“the Board”) and its members Tony K. Powell, William F. Andrews, Patricia M. Black, Martha Jordan, and George N. Coker (hereinafter collectively referred to as “the Board members”). Because the majority affirms without an opinion, a recitation of the relevant facts and procedural history is necessary.

I. Facts and Procedural History

L.N.’s complaint is based on alleged sexual abuse by Willie White, Jr., the assistant principal of Monroe County High School (“the school”) and the head basketball coach. L.N. attended the school from the fall of 2001 through 2004. During this period, Turner was the principal of the school, and Mixon was the superintendent of Monroe County Schools.
The affidavit testimony of G.C., the mother of N.C., a classmates of L.N.’s, indicates that in early 2003 G.C. told Turner and Mixon that White was engaged in a sexual relationship with L.N. G.C.’s affidavit testimony indicates that Mixon refused to inform the Board of her allegations and that Mixon would not allow G.C.’s allegations to be presented to the Board.
N.C.’s deposition testimony indicates that during N.C.’s 10th-grade year of school she and G.C. informed Mixon that White was having a sexual relationship with L.N. Her testimony was as follows:
“[N.C.:] We went to [Mixon] — me and [G.C.] both went to him, and [G.C.] told [Mixon] that I had something I wanted to tell him. And I tried to explain to him that when I went to [White] concerning the pass to get back in class, he would not give me one. He told me he didn’t want to talk to me or hear any of my problems. And I told him that I assumed just because I wouldn’t have no dealings with Coach White, that’s why he wouldn’t help me with any of my problems with Ms. Lambert.[4]
“Q. And did you also tell [Mixon] that you thought [White] gave other students passes because they would have dealings with [White]?
*470 “A. Yes, ma’am.
“Q. And did [Mixon] respond to you by saying those were just rumors?
“A. Yes.
“Q. What information did you have that the rumors were true?
“A. [L.N.] told me herself that her and Coach White have dealings.
“Q. When you say have dealings, what does that mean?
“A. [L.N.] told me that [she and White] was involved sexually, that [White had] given [L.N.] money, and that [White] put gas in [L.N.’s] car and that [L.N.] meets [White] at Winn-Dixie [grocery store].
“Q. But you didn’t tell Mr. Mixon that? You just told him that you assume because [White] was with other girls that they....
“A. No. I told [Mixon] that I knew that’s why because me and [L.N.] was kind of friends at first. And it was like Coach White was hitting on both of us. And that I....
“Q. Did you tell Mr. Mixon that you knew that [L.N.] was involved with Coach White sexually?
“A. Yes, ma’am. And [Mixon] said he didn’t want to hear it because he heard that was rumors.
“Q. Did you tell Mr. Mixon that you knew that Coach White gave [L.N.] money?
“A. Yeah.
“Q. Did you tell Mr. Mixon that you knew that Coach White put gas in [L.N.’s] car?
“A. Yes.
“Q. And you told Mr. Mixon that you knew that [L.N.] met Coach White at Winn-Dixie?
“A. Yes.”[5]
Although P.M., L.N.’s mother, testified during her deposition that January 7, 2003, was the first time she heard of White’s alleged sexual harassment of L.N., P.M. later stated that she could have heard of it for the first time on January 7, 2004. Other evidence in the record indicates that P.M. first learned of White’s alleged sexual harassment of L.N. in January 2004.
Upon hearing rumors of White’s alleged sexual harassment of L.N., K.M., P.M.’s husband and L.N.’s stepfather, informed Turner of White’s alleged sexual harassment of L.N. Turner’s deposition testimony indicates that K.M. telephoned Turner to inform Turner about White’s alleged sexual harassment of L.N. but that K.M. indicated at that time that he did not believe the allegations against White were true; Turner stated that this was the first time he had heard of White’s alleged sexual harassment of L.N.[6] K.M. asked Turner *471 to transfer KM.’s telephone call to White so that K.M. could discuss the matter with White, and Turner did so. K.M.’s deposition testimony indicates that White denied the allegations. KM. did not tell anyone else about White’s alleged sexual harassment of L.N. at that time. Turner did not immediately report to the Board the allegations that White and L.N. were involved in a sexual relationship because KM. had indicated that he did not believe that the allegations were true; Turner later reported White’s alleged sexual harassment of L.N. to the Board. Turner did, however, within a week of learning about White’s alleged sexual harassment of L.N., investigate the allegations. In the course of investigating the allegations, Turner spoke ■with L.N., White, and Sandra Lambert, one of L.N.’s teachers. Turner stated that L.N. denied that White had sexually harassed her. Turner also stated that he instructed L.N. to not go into White’s office for any reason. Turner stated that White and Lambert also denied the allegations.
Mixon’s deposition testimony indicates that he learned of the allegations against White from Turner. Mixon stated that Turner indicated to him that KM. and P.M. had said that the allegations were not true and that the allegations had been initiated by girls who did not like L.N. Mixon stated that, before hearing of White’s alleged sexual harassment of L.N., he had never heard any rumors involving improper sexual conduct on the part of White or any allegations that White “was involved with a student.”
On August 11, 2004, L.N., who was 18 years old at the time, met White off campus on a dirt road near a landfill in Mon-roeville. L.N.’s deposition testimony indicates that during that meeting L.N. and Wfiiite performed oral sex on one another. At some point, two Monroe County deputy sheriffs arrived on the scene. The deputy sheriffs questioned L.N. and White about why they were there and then allowed L.N. and White to leave; neither L.N. nor White informed the deputy sheriffs that L.N. and White had engaged in sexual acts. The deputy sheriffs compiled an incident report. On August 16, 2004, Mixon learned that the deputy sheriffs had seen L.N. and White together off campus on August 11, 2004.
Mixon initiated an investigation into the sexual-harassment allegations after he reviewed the incident report prepared by the deputies.[7] White was placed on administrative leave during the investigation; he later retired. At some point L.N. told K.M. and P.M. about her relationship with White, and L.N. later filed a police report in which she detailed her relationship with White, including their sexual encounters.
At all times relevant to this appeal, the Board had in place the following sexual-harassment policy, which all students of the school, including L.N., had received:
“Students shall not engage in conduct constituting sexual harassment. Sexual harassment, whether between students or between a student and an employee!,] is illegal and will not be tolerated. The Board will investigate all allegations of sexual harassment and take appropriate action against students who engage in sexual harassment. Sanctions against students for violation of this policy may include verbal or written warning, suspension, or expulsion.

“Definition

*472 “Sexual harassment is defined to include unwelcome sexual advance, request for sexual favors, and other verbal or physical conduct of a sexual nature when the advances, requests, or conduct have the effect of interfering with performance of school related activities or creating an intimidating, hostile, or otherwise offensive environment in or about the school or school facility.

“Complaint Procedure

“A student who believes he or she has been or is being subjected to any form of sexual harassment shall immediately report the matter to the school counsel- or, principal or the Superintendent. Any student who becomes aware of or suspects that a student is being sexually harassed shall immediately report the information to the school counselor, principal or Superintendent. A student’s request to make his or her report of sexual harassment to someone of the same sex as the student shall be granted.
“No student alleging sexual harassment shall be required to present the matter to the person who is the subject of the complaint.
“If the complaint is received by someone other than the school principal, the person receiving the complaint shall promptly inform the school principal. The principal shall start an immediate investigation into the matter. The custodial parent(s) of the student will be informed of the complaint. The completed investigation shall be reviewed by the Superintendent or the Superintendent’s designee and legal counsel for prompt and appropriate action, if warranted. A written response to the student’s complaint will be provided to the custodial parent(s) of the student and the student within 45 days of the date the student first registered the complaint. The student or the custodial parent(s) of the student may appeal the decision within 10 days of receipt of the decision by filing a written notice of appeal with the Superintendent. The Superintendent shall present the decision and notice of appeal to the Board at the next scheduled meeting of the Board. The Board shall make a final decision and notify the student and the custodial parent(s) of the student in writing of the Board’s decision.

“Protection of Complainant

“No student shall be subject to adverse action for any good faith report of sexual harassment under this policy. To the fullest extent practical, all reports of sexual harassment will be kept confidential.”
On January 19, 2007, L.N. sued Turner, Mixon, the Board members, and the Board (hereinafter referred to collectively as “the Monroe County defendants”). L.N. alleged that the Monroe County defendants’ responses to L.N.’s allegations of sexual harassment by White were inadequate, raising claims under 20 U.S.C. § 1681(a) (“Title IX”) and 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. L.N. also asserted claims of negligent and/or wanton hiring, training, supervision and/or retention; negligence; gross negligence; wantonness and/or recklessness; invasion of privacy; sexual assault and battery; and the tort of outrage.
On February 8, 2007, pursuant to Rule 12(b)(6), Ala. R. Civ. P., the Monroe County defendants filed a motion to dismiss L.N.’s claims of invasion of privacy and sexual assault and battery. Following a hearing, the circuit court granted the motion to dismiss as to Turner, Mixon, and the Board members, but it denied the motion as to the Board. On March 7, 2008, *473 the Monroe County defendants filed an answer to L.N.’s complaint.
On April 22, 2011, the Monroe County defendants filed a motion for a summary judgment, which they later supplemented, seeking a summary judgment on all of L.N.’s remaining claims against them. Specifically, the Monroe County defendants argued that the individual defendants are entitled to qualified immunity from L.N.’s § 1983 claim, that the Board is absolutely immune from suit under § 14, Ala. Const.1901, and that the individual defendants are entitled to State-agent immunity on L.N.’s negligence claims.
Although L.N. had not yet filed a motion for a summary judgment, she filed the deposition testimony of N.C. and the affidavit testimony of G.C. The Monroe County defendants filed a motion to strike N.C.’s testimony and portions of G.C.’s testimony.
On May 6, 2011, L.N. filed a response to the Monroe County defendants’ summary-judgment motion. All pending motions were set for a hearing to occur on July 26, 2011.
On September 7, 2011, the circuit court entered a summary judgment in favor of the Monroe County defendants. Curiously, the circuit court’s order granting the Monroe County defendants’ summary-judgment motion makes no mention of N.C.’s deposition testimony or of G.C.’s affidavit testimony. The relevant portions of the circuit court’s summary-judgment order state:

“I. [L.N.’s] CLAIMS AGAINST THE MONROE COUNTY BOARD OF EDUCATION.

[[Image here]]
“A [L.N. ⅛7 Title IX Claim.
“To establish a violation of Title IX, the plaintiff must satisfy the standard set forth by the United States Supreme Court in Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274, 118 S.Ct. 1989 (1998). In Gebser, the Supreme Court held that:
“ ‘[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient’s behalf has actual notice of discrimination in the recipient’s programs and fails adequately to respond.
“ ‘We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme [of Title IX] presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.’
“Gebser, 524 U.S. at 290. The Court also emphasized in Gebser that a school district cannot be held liable under Title IX for a teacher’s harassment based upon principles of constructive notice or respondeat superior. 524 U.S. at 281-290. The evidence in this case establishes that no school official had prior actual knowledge of the alleged sexual harassment of [L.N.]. The evidence further establishes that when school officials and employees learned of Willie White’s alleged harassment of [L.N.], they took immediate corrective action.
“[L.N.] has no admissible evidence that these Defendants had actual knowledge of any alleged misconduct committed by Willie White prior to his alleged actions with [L.N.]. The only information [L.N.] refers to is ‘rumors’ that White was engaged in inappropriate conduct with other students. However, the evidence in this case establishes that the *474 Board officials had no knowledge of any rumors about Mr. White prior to the rumor that came up about [L.N.].
“Principal Turner testified that he had not heard of any rumors concerning Mr. White prior to being contacted by [K.M.]. (Turner Depo., p. 48). Dennis Mixon also testified that he had heard no rumors prior to the time he was notified about this incident by Principal Turner. (Defs.’ Mixon Depo., pp. 24-25). Moreover, [L.N.] and her parents testified that they had no evidence to establish that the Board officials knew of any alleged relationships between Willie White and Monroe County students ([L.N.] Depo., p. 43; [K.M.] Depo., p. 49; [P.M.] Depo., pp. 47, 79).
“[L.N.] asserts that rumors should be enough to establish liability on the part of the Board. However, to create liability, [L.N.] must show deliberate indifference, not negligence. Even assuming, arguendo, that school officials had notice of previous rumors, or even of the rumors about [L.N.], such rumors are insufficient to establish deliberate indifference. See Brown v. Lamar County Sell. Dist., [No. 5:06-CV-294 (HL), Sept. 30, 2008] (M.D.Ga., Sep. 30, 2008) [not reported in F.Supp.2d]; see also Hackett v. Fulton Co. School Dist., 238 F.Supp.2d 1330 (N.D.Ga.2002).
“Upon learning of [L.N.]’s allegations against Willie White, the Board did not act with deliberate indifference. Upon receipt of information that Willie White might have been acting inappropriately with [L.N.], Principal Turner indisputably took action. He investigated the Turner allegation by talking with White and [L.N.], both of whom denied the rumors. Despite these denials, Principal Turner told [L.N.] that she should not go into White’s office and thus should limit her contact with White. (Turner Depo., p. 86; [L.N.] Depo., pp. 51-52).
“While [L.N.] says the corrective measures were ultimately ineffective in preventing White’s further harassment of [L.N.], the failure of such corrective measures does not constitute deliberate indifference, particularly when the undisputed testimony is that [L.N.] did not stay away from Willie White as directed by Principal Turner.
“When Board officials received an actual report that Willie White was indeed engaged in inappropriate conduct with [L.N.], the officials took immediate corrective measures. The undisputed evidence shows that Superintendent Mixon placed White on administrative leave, thus removing him from the school. (Mixon Depo., p. 127; see also Defs.’ Exh. 8). Mr. White never taught at the school again.1 (Defs.’ Exh. 8, August 24, 2004, correspondence from Superintendent Dennis Mixon to Willie White regarding administrative leave with pay; Defs.’ Exh. 9, August 24, 2004, correspondence from Superintendent Dennis Mixon to Willie James White, Jr., regarding Board of Education’s approval of application for retirement; and Defs.’ Exh. 10, August 30, 2004, letter from Superintendent Dennis Mixon to [P.M. and K.M.] regarding White’s administrative leave).
“Based on the above, the Board Defendants did not act with deliberate indifference to any rumors or actual reports of inappropriate conduct by Willie White. Accordingly, the Monroe County Board of Education is entitled to summary judgment in its favor as to the Title IX claim against it. See Ex parte Madison Co. Board of Educ., 1 So.3d 980 (Ala.2008); see also Davis v. DeKalb Co. School Dist., 233 F.3d 1367 (11th Cir.2000); Sauls v. Pierce Co. School *475 Dist., 899 F.Sd 1279, 1284 (11th Cir. 2005).
[[Image here]]

“B. State-Agent Immunity.

“In Ex parte Cranman, 792 So.2d 392 (Ala.2000), the Alabama Supreme Court restated the rules governing immunity of state agents for tort liability as follows:
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“ ‘(1) formulating plans, policies, or designs; or
‘“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“ ‘(a) making administrative adjudications;
“ ‘(b) allocating resources;
“ ‘(c) negotiating contracts;
“ ‘(d) hiring, firing, transferring, assigning, or supervising personnel; or
“ ‘(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State-agent performs the duties in that manner; or
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“‘(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.’
“792 So.2d at 405 (emphasis added). At all times relevant to this case, the Board defendants were either members or employees of the Monroe County Board of Education who exercised their judgment in supervising personnel and educating students. Furthermore, [L.N.] has not presented substantial evidence that these defendants acted willfully, maliciously, in bad faith, or beyond their authority. As such, they are entitled to State-agent immunity and thus, summary judgment on [L.N.j’s state law negligence and wantonness claims. See L.S.B. v. Howard, 659 So.2d 43 (Ala.1995); C.B. v. Bobo, 659 So.2d 98 (Ala.1995); and Hill v. Allen, 495 So.2d 32 (Ala.1986).

“CONCLUSION AND ORDER

“In accordance with the foregoing, the summary judgment motion of defendants Monroe County Board of Education, Larry Turner, Dennis L. Mixon, Tony K. Powell, William F. Andrews, Patricia M. Black, Martha Jordan, and George N. Coker is GRANTED and all of [L.N.’s] claims against these defendants are DISMISSED with prejudice. Costs taxed to [L.N.].
" *At some point, Mr. White attempted to rescind his retirement; however Superintendent Mixon refused to allow such action and ordered that Mr. White never return to the Monroe County High School campus. See Defs’. Exh. 8. There is no evidence that Mr. White had any further school-related contact with [L.N.].”
(Capitalization in original.) In its conclusion concerning L.N.’s Title IX claim, the circuit court concluded that “[t]he evidence in this case establishes that no school official had prior actual knowledge of the alleged sexual harassment of [L.N.].” Again, as stated above, the circuit court *476 made no mention of N.C.’s deposition testimony or of G.C.’s affidavit testimony in its summary-judgment order.
On October 4, 2011, L.N. filed a motion to alter, amend, or vacate the circuit court’s judgment pursuant to Rule 59(e), Ala. R. Civ. P. Among other things, L.N. argued that N.C.’s deposition testimony and G.C.’s affidavit testimony created a genuine issue of material fact as to whether the Monroe County defendants had actual notice of White’s alleged sexual harassment of L.N. On January 4, 2012, the circuit court denied L.N.’s post-judgment motion; the circuit court did not explain why it ignored N.C.’s deposition testimony and G.C.’s affidavit testimony. On February 10, 2012, L.N. appealed the summary judgment in favor of the Board, Turner, Mixon, and Andrews (hereinafter collectively referred to as “the appellees”).

II. Standard of Review

“Our standard of review of a summary judgment is well settled:
[[Image here]]
“ ‘ “A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmov-ing party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present ‘substantial evidence’ creating a genuine issue of material fact — ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”’”
Cobb v. Fisher, 20 So.3d 1253, 1256-57 (Ala.2009).

III. Discussion

I concur with the majority’s decision to affirm the circuit court’s summary judgment on L.N.’s tort claims against the Board, Turner, Mixon, and Andrews in their official capacities; I also concur with the majority’s decision to affirm the circuit court’s summary judgment on L.N.’s § 1983 claim. I respectfully dissent, however, from the majority’s decision to affirm the circuit court’s summary judgment on L.N.’s Title IX claim because by doing so the majority unequivocally ignores N.C.’s deposition testimony and G.C.’s affidavit testimony, as did the circuit court. I also respectfully dissent from the majority’s decision to affirm the circuit court’s summary judgment insofar as that judgment was premised on the holding that Turner and Mixon were entitled to State-agent immunity.

A. L.N.’s Title IXClaim

L.N. argues that the Board is not entitled to a summary judgment on L.N.’s Title IX claim. In Doe v. School Board of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir.2010), the United States Court of Appeals for the Eleventh Circuit set forth the applicable law governing a Title IX claim:
“Title IX provides that ‘[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject *477 ed to discrimination under any education program or activity receiving Federal financial assistance.’ 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied right of action for money damages in Title IX cases of intentional sexual discrimination and has held that a teacher’s sexual harassment of a student constitutes actionable discrimination under Title IX. Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 75-76, 112 S.Ct. 1028, 1037-38,117 L.Ed.2d 208 (1992). In the case of teacher-on-student sexual harassment, our analysis is governed by the Supreme Court’s decision in Gebser v. Lago Vista Independent School District, 524 U.S. 274, 118 S.Ct. 1989,141 L.Ed.2d 277 (1998).
“In Gebser, the Supreme Court made plain that not all sexual harassment by teachers is sufficient to impose liability on a school district. Because ‘Title IX is predicated upon notice to an “appropriate person” and an opportunity to rectify any violation,’ id. at 290, 118 S.Ct. at 1999 (citing 20 U.S.C. § 1682), the Court explained that school districts may not be held liable on a theory of respondeat superior or mere constructive notice, id. at 285, 118 S.Ct. at 1997. Rather, Title IX liability arises only where ‘an official of the school district who at a minimum has authority to institute corrective measures on the district’s behalf has actual notice of, and is deliberately indifferent to, the teacher’s misconduct.’ Id. at 277,118 S.Ct. at 1993.
“Therefore, applying the Gebser framework to the summary judgment context requires three related inquiries. First, the plaintiff must be able to identify an ‘appropriate person’ under Title IX, i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment. See Floyd v. Waiters, 171 F.3d 1264, 1264 (11th Cir.1999). Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiffs harassment. See Gebser, 524 U.S. at 291, 118 S.Ct. at 2000. And finally, the official with such notice must exhibit deliberate indifference to the harassment. See Sauls [ v. Pierce County Sch. Dist.], 399 F.3d [1279,] 1281 [ (11th Cir.2005) ].”
First, it is undisputed that Turner, Mix-on, and the Board members were “appropriate persons” “with the authority to take corrective measures in response to actual notice of sexual harassment” under the test set forth in Gebser v. Lago Vista Independent School District, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), which the Eleventh Circuit relied upon in Doe.
Second, L.N. argues that Turner and Mixon had actual notice of L.N.’s alleged sexual harassment by White. L.N. relies upon the deposition testimony of N.C. and the affidavit testimony of G.C., set forth above. N.C.’s and G.C.’s testimony indicates that they informed Turner and Mix-on of White’s alleged sexual harassment of L.N. in the early part of 2003. N.C.’s deposition testimony indicates that she told Mixon that L.N. had told N.C. that L.N. and White were engaged in a sexual relationship, that White had provided her with money, and that White had met L.N. at a location off campus. Curiously, the circuit court makes no mention of this evidence in its summary-judgment order. The parties have not directed this Court’s attention to anything in the record indicating that the Monroe County defendants’ motion to strike N.C.’s deposition testimony and G.C.’s affidavit testimony was granted; thus, I will assume that the evidence was properly before the circuit court. Therefore, I conclude, unlike the majority, that N.C.’s deposition testimony *478 and G.C.’s affidavit testimony create a genuine issue of material fact as to whether the Board received actual notice of White’s alleged sexual harassment of L.N.
L.N. also argues that the third factor of the Gebser test was satisfied in that the Monroe County defendants acted with deliberate indifference after receiving actual notice of White’s alleged sexual harassment of L.N. In Doe, the Eleventh Circuit set forth the following concerning the deliberate-indifference prong of the Gebser test:
“In addition to requiring that an appropriate person have actual notice of the teacher’s misconduct, a Title IX plaintiff must show that the official was deliberately indifferent to that misconduct. Gebser, 524 U.S. at 277, 118 S.Ct. at 1993. Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their ‘response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.’ Davis [ v. Monroe County Bd. of Educ.], 526 U.S. [629,] 648, 119 S.Ct. [1661,] 1674 [(1999)]. In essence, Title IX’s premise ‘is an official decision by the recipient not to remedy the violation.’ Gebser, 524 U.S. at 290, 118 S.Ct. at 1999.”
Doe, 604 F.3d at 1259.
The circuit court states in its order granting the Monroe County defendants’ summary-judgment motion that it is an undisputed fact that, “after learning of White’s alleged sexual harassment of [L.N.], Principal Larry Turner took action.” However, this statement ignores N.C.’s deposition testimony and G.C.’s affidavit testimony in which N.C. and G.C. indicate that they informed Turner and Mixon of “White’s alleged sexual harassment of L.N. in early 2003 and that Turner and Mixon did nothing to investigate those allegations. In fact, in her postjudgment motion, L.N. argued that the circuit court had failed to consider N.C.’s deposition testimony and G.C.’s affidavit testimony in reaching its conclusion. It was not until early 2004, when KM. and P.M. informed Turner and Mixon that they had heard that White was sexually harassing L.N., approximately a year after Turner and Mixon learned of White’s alleged sexual harassment of L.N. from N.C. and G.C., that Turner investigated the allegations.
The appellees argue that the “evidence in this case shows that no [Monroe County defendant] was actually aware of a serious risk of harm to L.N. by Willie White.” The appellees’ brief, at p. 23. However, the appellees have ignored N.C.’s deposition testimony and G.C.’s affidavit testimony as they pertain to this issue. In light of the circumstances of this case, I conclude, unlike the majority, that there is a genuine issue of material fact as to whether Turner and Mixon were deliberately indifferent in their lack of response to White’s alleged sexual harassment of L.N. Both N.C.’s deposition testimony and G.C.’s affidavit testimony indicate that Turner and Mixon simply refused to believe N.C. and G.C. The undisputed evidence shows that Turner did not investigate White’s alleged sexual harassment of L.N. until early 2004, approximately a year after he learned from N.C. and G.C. of the allegations against White. In my opinion, there exists a genuine question of material fact as to whether Turner and/or Mixon made an official decision not to remedy the alleged violation. Therefore, I dissent from the majority’s decision insofar as it affirms the summary judgment in favor of the Monroe County Board of Education on L.N.’s Title IX claim; to do otherwise would require me to ignore substantial evidence properly before the circuit court.

*479
B. State-Agent Immunity

Next, L.N. argues that the circuit court’s holding that Turner and Mixon are entitled to State-agent immunity as to L.N.’s tort claims asserted against them in their individual capacities was in error.[8]
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“ ‘(1) formulating plans, policies, or designs; or
“ ‘(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“ ‘(a) making administrative adjudications;
“ ‘(b) allocating resources;
“ ‘(c) negotiating contracts;
“ ‘(d) hiring, firing, transferring, assigning, or supervising personnel; or
“ ‘(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“‘(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“‘Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“ ‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“ ‘(2) when the State agent acts willfully,- maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’
“Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000).[1]
“ ‘This Court has established a “burden-shifting” process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts *480 to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). “A State agent acts beyond authority and is therefore not immune when he or she ‘fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’” Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).’
“Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). Additionally, as this Court recently stated:
“ ‘ “State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions.” Ex parte Blankenship, 806 So.2d 1186, 1190 (Ala.2000). However, “[o]nce it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. [Ex parte] Cranman, 792 So.2d [392,] at 405 [ (Ala.2000) ].” Ex parte Bitel, 45 So.3d 1252, 1257-58 (Ala.2010).’
“N.C. v. Caldwell, 77 So.3d 561, 566 (Ala.2011).
Ex parte Montgomery Cnty. Bd. of Educ., 88 So.3d 837, 842-43 (Ala.2012).
L.N. argues that Turner and Mixon, as employees of the Board, were subject to the Board’s sexual-harassment policy.[9] L.N. argues that Turner’s and Mixon’s adherence to the Board’s sexual-harassment policy was not discretionary and that the failure to conduct an immediate investigation upon learning of allegations of White’s sexual harassment of L.N. was a violation of the policy. L.N. relies upon N.C.’s deposition testimony and G.C.’s affidavit testimony as substantial evidence that Turner and Mixon received a complaint and did not act immediately upon the complaint. The Board members, Turner, and Mixon make no mention of N.C.’s deposition testimony or G.C.’s affidavit testimony concerning this issue in their brief on appeal.
As set forth above, N.C.’s deposition testimony and G.C.’s affidavit testimony indicates that they informed Turner and Mixon of White’s alleged sexual harassment of L.N. There is substantial evidence that neither Turner nor Mixon acted in compliance with the Board’s sexual-harassment policy upon receiving notice from N.C. and G.C. of White’s alleged sexual harassment of L.N. Specifically, there is substantial evidence that Turner did not immediately conduct an investigation upon *481 learning from N.C. and G.C. of the allegations of White’s sexual harassment of L.N. and that Mixon did not promptly report White’s alleged sexual harassment of L.N. to Turner so that Turner could, in turn, conduct an immediate investigation. According to the Board’s sexual-harassment policy, neither Turner nor Mixon had the discretion to ignore a report that a student was being sexually harassed. Instead, the Board’s sexual-harassment policy is clear that certain procedures must take place upon a report of sexual harassment. N.C.’s deposition testimony and G.C.’s affidavit testimony are substantial evidence creating a genuine issue of material fact as to whether Turner and/or Mixon “acted willfully, maliciously, fraudulently, in bad faith, [or] beyond his ... authority,” Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000), thereby making State-agent immunity unavailable to them. See Montgomery Cnty. Bd. of Educ., 88 So.3d at 843 (quoting N.C. v. Caldwell, 77 So.3d 561, 566 (Ala.2011)); see also id. (quoting Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006), quoting in turn Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003), quoting in turn Ex parte Butts, 775 So.2d 173, 178 (Ala.2000) (‘““A State agent acts beyond authority and is therefore not immune when he or she Tail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’ ” ’ ”)). Therefore, I respectfully dissent from the majority’s decision to affirm the summary judgment insofar as the circuit court determined that Turner and Mixon were entitled to State-agent immunity.

IV. Conclusion

My reasoning for dissenting in part from the majority’s decision to affirm without opinion the circuit court’s summary judgment rests solely on the disregard for substantial evidence properly before the circuit court. The circuit court, the appel-lees, and the majority have set forth no reason for the utter disregard of N.C.’s deposition testimony and G.C.’s affidavit testimony. If considered, N.C.’s and G.C.’s testimony clearly creates a genuine issue of material fact as to the issues set forth above; L.N. has met her burden and is entitled to have her case tried before a jury of her peers. The majority’s decision to affirm without an opinion the circuit court’s decision, which unequivocally and without explanation ignores substantial evidence before it, diminishes L.N.’s due-process rights.

. It appears that N.C.’s "problems with Ms. Lambert” stemmed from an altercation between N.C. and several other students that ultimately resulted in N.C.’s expulsion from the school.

. The Board and the Board members attack N.C.’s credibility as a witness; however, they do not argue that N.C.’s testimony was not properly before the circuit court. This Court has stated:
"It goes without saying that ‘ " 'a court may not determine the credibility of witnesses on a motion for summary judgment.’ ” ’ Wilson v. Teng, 786 So.2d 485, 498 (Ala.2000) (quoting Ex parte Usrey, 777 So.2d 66, 68 (Ala.2000), quoting in turn Phillips v. Wayne's Pest Control Co., 623 So.2d 1099, 1102 (Ala.1993)).”
Dixon v. Board of Water & Sewer Comm'rs of the City of Mobile, 865 So.2d 1161, 1166 n. 2 (Ala.2003). Therefore, the Board and the Board members' argument attacking the credibility of N.C. as a witness is irrelevant. I also note that the Board and the Board members do not attack the credibility of G.C.'s testimony in their brief to this Court.

. Turner's deposition testimony also indicates that, prior to learning about White’s alleged sexual harassment of L.N., he was not aware of any allegations of sexual harassment against White by other students.

. Although Turner could not remember the exact date he informed Mixon of White’s alleged sexual harassment of L.N., Turner was certain that he reported the alleged sexual harassment to Mixon before Mixon learned of the August 11, 2004, incident.

. I note that the circuit court determined that the Board members, Turner, and Mixon were entitled to State-agent immunity insofar as L.N. sued them in their individual capacities. Although L.N. generally states in an argument heading in her appellate brief that "the individual Board defendants are not entitled to State-agent immunity,” L.N. clearly limits her argument, both in her appellate brief and in her reply brief, to Turner and Mixon. Therefore, I will analyze only whether the circuit court erred in determining that Turner and Mixon are entitled to State-agent immunity as to L.N.’s tort claims asserted against them in their individual capacities.

" 1 Although Cranman was a plurality opinion, the test set forth in Cranman was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173, 178 (Ala.2000).”

. As set forth above, the Board’s sexual-harassment policy states, in pertinent part:
"A student who believes he or she has been or is being subjected to any form of sexual harassment shall immediately report the matter to the school counselor, principal or the Superintendent. Any student who becomes aware of or suspects that a student is being sexually harassed shall immediately report the information to the school counselor, principal or Superintendent....
[[Image here]]
"If the complaint is received by someone other than the school principal, the person receiving the complaint shall promptly inform the school principal. The principal shall start an immediate investigation into the matter."
(Emphasis added.)